UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

BP PRODUCTS NORTH AMERICA INC.

                Plaintiff,

        -against-

MOTOR PARKWAY AMOCO,
STEVE KESHTGAR, and MOTOR PARKWAY
ENTERPRISES INC.
                Defendants.
----------------------------------------X

**OPINION & ORDER**
**CV-06-0833 (SJF)(ARL)**

FEUERSTEIN, J.

On February 24, 2006, plaintiff BP Products North America Inc. (BP) filed a complaint against defendants Motor Parkway Amoco (Motor Parkway) and Steve Keshtgar (Keshtgar) (collectively, defendants) alleging, *inter alia*, violation of a restrictive covenant. Pending before the Court is BP's order to show cause pursuant to Rule 65 of the Federal Rules of Civil Procedure seeking a preliminary injunction enjoining defendants, *inter alia*, (1) from using certain property located at 260 Motor Parkway, Brentwood, New York (the Service Station property) to sell any motor fuel products that are not BP-branded fuel products. For the reasons set forth herein, BP's motion is granted.

I.    Background

    A.    Factual Background[1]

---

[1] The factual allegations are taken from the complaint and from the affidavits and exhibits submitted in support of, and in opposition to, BP's application for a preliminary injunction.

1

1. The Parties

BP is a manufacturer and distributor of fuel products throughout the United States. (Complaint [Compl.], ¶ 27).

Defendant Steven Keshtgar (Keshtgar) is the president of Motor Parkway. (Affidavit of Steven Keshtgar [Keshtgar Aff.], ¶ 3). Defendants operate a gasoline and petroleum service station located at 260 Motor Parkway, Brentwood, New York (the Service Station). (Compl., ¶ 7). The Service Station was originally operated as an Amoco service station, but became a BP service station after BP's acquisition of Amoco. (Declaration of Matthew J. Smith dated May 3, 2006 [Smith Decl.], ¶ 2).

2. The Dealer Supply Agreement

On May 24, 2001, BP's corporate predecessor, Amoco Oil Company (Amoco), and Motor Parkway entered into a Dealer Supply Agreement (the Agreement), pursuant to which, *inter alia*, Motor Parkway obtained the right to act as a reseller of BP's motor fuels, motor oils and other products for a term of five years, with a five-year renewable option. (Compl., ¶ 8; Agreement, ¶ 17; Smith Aff., ¶¶ 7-8).

3. The Real Estate Contract and Assignment of Lease

The Service Station property was originally leased by Amoco from Kunigunda Realty Corp. pursuant to a long-term lease dated December 9, 1968 (the long-term lease). (Smith Aff., ¶ 10). On July 19, 2001, Amoco entered into a Real Estate Contract with Motor Parkway Enterprises, Inc., pursuant to which Amoco conveyed to Motor Parkway all of its rights under the

long-term lease. (Smith Aff., ¶ 10; Compl., ¶ 18). The Real Estate Contract contained specific covenants and restrictions, one of which prohibits Motor Parkway from selling any non-BP motor fuel or other petroleum products at the service station for a period of five (5) years from the date the parties executed the contract. (Real Estate Contract, ¶ H ). Specifically, paragraph H of the Real Estate Contract provides, in relevant part, as follows:

> [Motor Parkway] herein covenants and agrees * * * that no part of the real estate herein conveyed shall be used by [Motor Parkway] * * * for the purpose of conducting or carrying on the business of selling, handling, or dealing in gasoline, diesel fuel, kerosene, benzol, naphtha, grease, lubricating oils, or any fuel used for internal combustion engines, or lubricants in any form; except that this restriction shall not preclude the operation of a retail gasoline facility selling [Amoco]-branded gasoline and petroleum products. This restriction binds and restricts the property as a covenant and restriction running with the land * * *. This restrictive covenant will remain in full force and effect for a term of five (5) years from the date of this conveyance, subject to [Amoco's] right to extend the restrictive covenant for an additional five (5) years at its option.

Amoco and Motor Parkway subsequently entered into an Assignment of Lease dated August 31, 2001, which contained substantially the same use restriction. (Assignment of Lease, ¶ 7).

By letter dated December 10, 2001, the landlord of the Service Station property objected to Amoco's attempt to bind the property in a manner in excess of its interests under the lease and demanded that the assignment be modified so that the use restrictions were "expressly limited solely to the use of the property by [Motor Parkway], its successor and assigns on a personal basis, do not run with the land and in no way affect the property of Landlord's right, title or interest therein." According to the landlord, notwithstanding the language in paragraph H to the

3

contrary, the restrictive covenant does not run with the land. (Affidavit of Fred Colin dated March 20, 2006 [Colin Aff.], ¶ 7).

4. Termination of the Agreement

By letter dated February 17, 2006, Motor Parkway advised BP that its was terminating the Dealer Supply Agreement effective February 17, 2006. On or about that date, defendants removed or caused to be removed the BP lettering and distinctive BP "helios" from the Service Station. (Compl., ¶ 9; Smith Aff., ¶¶ 21, 24). By Mutual Cancellation dated February 23, 2006, the parties terminated, *inter alia*, the Dealer Supply Agreement, effective March 13, 2006.[2]

B. Procedural Background

On February 24, 2006, BP commenced this action alleging unfair competition, trademark infringement, trade dress infringement and false designation of origin under Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1501, *et seq.*, as amended, (the Lanham Act), 15 U.S.C. § 1125(a); infringement of federally registered trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); dilution of the distinctive quality of BP's trademarks and trade dress in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); violations of New York General Business Law §§ 349 and 360-l; and common law claims for unfair competition. In its complaint, BP seeks injunctive relief, an accounting and monetary damages

---

[2] The Mutual Cancellation did not terminate the Real Estate Contract or Assignment of Lease and, contrary to defendants' contention, there is no evidence that the Real Estate Contract or Assignment of Lease were associated agreements or otherwise incorporated by reference into to Dealer Supply Agreement.

4

pursuant to 15 U.S.C. § 1117. BP simultaneously filed an order to show cause pursuant to Rule 65 of the Federal Rules of Civil Procedure seeking a preliminary injunction enjoining defendants (1) from using the Service Station property to sell any motor fuel products that are not BP-branded fuel products; (2) from selling unidentified fuel that is not the property of BP to customers while continuing to use BP's trademarks and trade dress or any derivative or colorable imitation thereof; (3) from engaging in any other course of conduct likely to enable defendants to benefit from the goodwill and reputation established in BP trademarks and trade dress; and (4) from doing any other act likely to cause confusion or mislead the public into believing that the gasoline products sold by defendants are the same or similar to BP's gasoline products or are otherwise authorized by BP.[3]

II. DISCUSSION

A. Standard for Injunctive Relief

In order to obtain a preliminary injunction, a plaintiff must demonstrate (1) a likelihood of irreparable injury in the absence of injunctive relief; (2) either a likelihood of success on the merits, or "sufficiently serious questions going to the merits to make them a fair ground for litigation" and a balance of hardships tipping decidedly in the plaintiff's favor. Malletier v. Burlington Coat Factory Warehouse Corp., 426 F.3d 532, 537 (2d Cir. 2005); Sunward

---

[3] Although BP originally sought to enjoin defendants from selling non-BP fuel at the Service Station while continuing to visibly display BP's trademark and trade dress, BP concedes that defendants have re-branded the station as a BP station and agreed to continue selling BP products during the pendency of this motion. Thus, the only issue before me is defendants' alleged violation of the restrictive covenant contained in the Real Estate Contract and Assignment of Lease.

Electronics, Inc. v. McDonald, 362 F.3d 17, 24 (2d Cir. 2004).

1. Likelihood of Success

In New York, "the law has long favored free and unencumbered use of real property, and covenants restricting use are strictly construed against those seeking to enforce them." Witter v. Taggart, 78 N.Y.2d 234, 237, 573 N.Y.S.2d 146, 577 N.Ed.2d 338 (N.Y. 1991); see also Kew Forest Neighborhood Association, Inc. v. M&K Management, LLC, 12 A.D.3d 569 (2d Dept. 2004) (holding that covenants restricting the use of land are strictly construed against those seeking their enforcement because these covenants are contrary to the general public policy in favor of the free and unobstructed use of real property). Courts applying New York law will enforce restrictive covenants "only where their existence has been established with clear and convincing proof" by the party seeking to enforce them. Witter, 78 N.Y.2d at 238, 573 N.Y.S.2d 146; see also Huggins v. Castle Estates, Inc., 36 N.Y.2d 427, 430, 369 N.Y.S.2d 80, 330 N.E.2d 48 (N.Y. 1975) (holding that the burden of proof is on the party endeavoring to enforce a restrictive covenant and that a court will enforce a restrictive covenant only where it has been established by clear and convincing proof).

Nonetheless, restrictive covenants are enforceable "when the intention of the parties is clear and the limitation is reasonable and not offensive to public policy." Chambers v. Old Stone Hill Road Associates, 1 N.Y.3d 424, 431, 774 N.Y.S.2d 866, 806 N.E.d2d 979 (N.Y. 2004). A restrictive covenant is reasonable "if not excessive as to time, scope and area and is not unduly burdensome." Baker's Aid v. Hussman Foodservice Co., 730 F.Supp. 1209, 1215 (E.D.N.Y. 1990) (internal quotations and citation omitted); see also Spherenomics Global Contact Centers

v. Vcustomer Corp., 427 F.Supp.2d 236, 249 (E.D.N.Y. 2006) (accord). The reasonableness and enforceablity of restrictive covenants depends, in part, on the context in which the promise was made. Spherenomics, 427 F.Supp.2d at 249; see also DAR & Associates, Inc. v. Uniforce Services, Inc., 37 F.Supp.2d 192, 196 (E.D.N.Y. 1999) (holding that the enforceability of a restrictive covenant depends in part upon the nature of the underlying contract). For example, restrictive covenants contained in contracts for the sale of a business are "routinely enforced," Baker's Aid, 730 F.Supp. at 1214, but such covenants contained in employment contracts are "rigorously examined" and are only enforced to protect an employer from unfair competition. Id. Covenants contained in an ordinary commercial contract that does not involve the sale of a business, such as the one at issue here, are assessed by "balancing the competing public policies in favor of robust competition and freedom to contract." DAR, 37 F.Supp.2d at 197; see Spherenomics, 427 F.Supp.2d at 249. Under this analysis, I must examine "the legitimate business interests to be served by the covenant, the reasonableness of the geographic scope and temporal duration of the restriction, and the hardship enforcement would impose." Spherenomics, 427 F.Supp.2d at 249; see also DAR, 37 F.Supp.2d at 197.

Initially, contrary to defendants' contention, since BP is the corporate successor-in-interest to Amoco, the "declarant" of the covenant, it is entitled to enforce the restrictive covenant.[4] See, e.g. Forest Hills Gardens Corp. v. Evan, 12 A.D.3d 563, 564, 786 N.Y.S.2d 70 (2d Dept. 2004). Moreover, since BP transferred its leasehold interest in the Service Station

---

[4] Paragraph 22 of the Real Estate Contract provides, in relevant part, that "[t]he provisions hereof shall inure to the benefit of and bind the parties hereto, their respective heirs, personal representatives, successors and assigns. * * *." Substantially the same provision is contained in paragraph 6 of the Assignment of Lease.

7

property to defendants via the Real Estate Contract and subsequent Assignment of Lease, the real estate was "conveyed" within the meaning of the restrictive covenant, notwithstanding that BP and/or Amoco did not own the property in fee simple and did not transfer its property right by written deed.[5]

        a.      The Interests Protected by the Restrictive Covenant

BP clearly has a legitimate business interest in safeguarding its reputation and goodwill and in preventing unfair competition from defendants who previously benefitted from their relationship with BP. See, e.g. DAR, 37 F.Supp.2d at 198-199 (finding that the defendant has a protectable business interest in preventing unfair competition and interference with its ability to secure another franchise in the territory). By becoming a BP franchisee and operating under the BP name, defendants took advantage of BP's reputation and goodwill in establishing its service station. Since BP has a legitimate business interest in enforcing the covenant, enforcement of the covenant does not offend public policy.

        b.      The Reasonableness of the Restrictive Covenant

"The reasonableness of the restrictive covenant must be assessed in light of the fact that it was negotiated by sophisticated businessman [sic]." Spherenomics, 427 F.Supp.2d at 250. Defendants do not contend that they were coerced into agreeing to the restrictive covenant in the

---

[5] The legal definition of the word "convey" is "[t]o transfer or deliver (something, such as a right or property) to another, esp[ecially] by deed or other writing." Black's Law Dictionary 334 (7th ed. 1999). A "conveyance" is defined, in part, as "[t]he transfer of an interest in real property * * * by means of an instrument such as a deed." Id.

8

Real Estate Contract or Assignment of Lease, or that they "lacked any meaningful choice with regard to accepting it." Id.; see also Servicemaster Residential/Commercial Services, L.P. v. Westchester Cleaning Services, Inc., No. 01 Civ. 2229, 2001 WL 396520, at * 3 (S.D.N.Y. Apr. 19, 2001)(holding that the party seeking to avoid a restrictive covenant between business entities must demonstrate a lack of meaningful choice during the bargaining process). Indeed, defendants could have opted to pay a higher purchase price for the leasehold interest without a restrictive covenant, but instead chose to pay $260,000 less for the assignment burdened with the restrictive covenant at issue. Accordingly, the covenant is the result of fair negotiation.

Moreover, the five-year duration of the term at issue is reasonable considering that this was an arm's length transaction between sophisticated businesspeople. See, e.g. Spherenomics, 427 F.Supp.2d at 250 (finding that the two-year term at issue, although potentially problematic in a different context, was reasonable given that an arm's length business transaction between knowledgeable parties was involved). In addition, the covenant is reasonable in its geographic restriction since it pertains only to the property at issue.

Moreover, in cases involving termination of a franchise relationship, restrictive covenants have been enforced because, *inter alia*, there is a recognized danger that the continued operation of the business out of the same location, albeit under a different name, may confuse customers and thereby damage the good will of the franchiser. Servicemaster, 2001 WL 396520, at * 3.

    c.    Degree of Hardship to Defendants

There is nothing to suggest any hardship to defendants by the enforcement of the covenant in this case. Defendants are not barred from using the property and are only subject to

reasonable use restrictions as a retail gasoline facility. Moreover, any hardship suffered by defendants upon enforcement of the covenant is mitigated by the fact that defendants specifically agreed to the covenant in both the Real Estate Contract and subsequent Assignment of Lease, and that defendants received benefits under those contracts until it chose to terminate its relationship with BP. See, e.g. DAR, 37 F.Supp.2d at 200 (finding that any hardship the plaintiff faced in terminating its agreements with the defendant was mitigated by the fact, *inter alia*, that the plaintiff, with its eyes wide open, specifically agreed to bear the risk of that hardship and received the benefit of its bargain by use of the defendant's trade name for ten years). Since the covenant is reasonable to protect the legitimate business interests of BP, see, e.g. Baker's Aid, 730 F.Supp. at 1214, and defendants will not suffer any significant hardship by its enforcement, the restrictive covenant is enforceable. As it is undisputed that defendants sold non-BP products at the service station prior to the termination of the five year period, BP has established a likelihood of success on the merits of its claim regarding a violation of the restrictive covenant.

2. Irreparable Injury

As noted above, the continued operation of the business out of the same location with many of BP's trademarks and trade dress in place, albeit under a different name, may confuse customers and thereby damage the good will and reputation of BP. Servicemaster, 2001 WL 396520, at * 3. Accordingly, BP has demonstrated that it will suffer irreparable injury if defendants are permitted to avoid their obligations under the restrictive covenant.

III. CONCLUSION

For the foregoing reasons, BP's application for a preliminary injunction to enforce the restrictive covenant contained in the Real Estate Contract and Assignment of Lease is granted. Defendants are hereby restrained and enjoined from selling, handling or dealing in gasoline and petroleum products at the Service Station property located at 260 Motor Parkway, Brentwood, New York, other than BP-branded products, pending the outcome of the instant litigation or termination of the Real Estate Contract and Assignment of Lease, whichever is earlier.

SO ORDERED.

_____
Sandra J. Feuerstein
United States District Judge

Dated: August 21, 2006
Central Islip, New York

Copies to:

Kelley Drye & Warren LLP
101 Park Avenue
New York, New York 10178

Kenneth Geller, P.C.
372 Doughty Boulevard
Inwood, New York 11096